United States District Court    Northern District of Illinois

**RECEIVED**

**JUN 2 1 2021**

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

Steven Andrew Johnson,
     Plaintiff,

      v.

Alma Martija,

Advanced Correctional Healthcare, Inc.,

Lee County Sheriff John Simonton (sued in his individual
   and official capacity),

Lee County Deputy Murray,

Lee County Deputy Pettenger,

Lee County Deputy John Doe-Badge #578,

Lee County Sgt. John Edwards,

Lee County Sheriffs' Department,
         Defendants

Case No: 21-56247

## Complaint Under The Civil Rights Act
## Title 42 Section 1983 U.S. Code
### (state, county, or municipal defendants)

I. Plaintiff:

   I, Plaintiff Steven Andrew Johnson, pro se, for their complaint state as follows:

A. Plaintiff Steven Andrew Johnson, Jail ID# LCJ-00351, is, and was at all times relevant to this action, confined within the Lee County Jail located at 240 E. Progress Drive in the City of Dixon in the State of Illinois from 02/10/2020 to current.

B. Plaintiff is, and was at all times mentioned herein, an adult citizen of the United States and a resident of the State of Illinois.

II. Defendants

    A. Defendant: Alma Martija, MD.
       Title: Medical Doctor
       Place of Employment: Advanced Correctional Healthcare, Inc.

    B. Defendant; Advanced Correctional Healthcare, Inc.
       Title: Healthcare Provider
       Place of Employment: On Contract with Lee County Sheriff's Department

    C. Defendant: Lee County Sheriff John Simonton
       Title: Lee County Sheriff
       Place of Employment: Lee County Sheriff's Department

    D. Defendant: Lee County Deputy Murray
       Title: Lee County Deputy
       Place of Employment: Lee County Sheriff's Department

    E. Defendant: Lee County Deputy John Doe - Badge # 578
       Title: Lee County Deputy
       Place of Employment: Lee County Sheriff's Department

    F. Defendant: Lee County Deputy Pettenger
       Title: Lee County Deputy
       Place of employment: Lee County Sheriff's Department

    G. Defendant: Lee County Sgt. John Edwards
       Title: Lee County Sargeant
       Place of Employment: Lee County Sheriff's Department

    H. Defendant: Lee County Sheriff's Department
       Title: Lee County Sheriff's Department
       Place of Employment: Lee County, Illinois

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:

A. Name of case and docket number: Steven Andrew Johnson v. Devon Gugerty, et al. 2021 CH 00002

B. Approximate date of filing lawsuit: 02/08/2021

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: ——

D. List All defendants: Devon Gugerty ; John Simonton - Lee County Sheriff ; Lee County Sheriff's Department

E. Court in which the lawsuit was filed: 15th Judicial Circuit of Lee County

F. Name of Judge to whom case was assigned: Judge Douglas Lee

G. Basic Claim made: No responses to multiple FOIA requests

H. Disposition of this case: still pending

I. Approximate date of disposition: next court date is Sept 1st, 2021.

III. List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States: (cont.)

A. Name of case and docket number: Steven Andrew Johnson v. Renee Grenoble   2021 SC 124

B. Approximate date of filing lawsuit: 05/10/2021

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: —

D. List All defendants: Renee Grenoble

E. Court in which the lawsuit was filed: Ogle County

F. Name of Judge to whom case was assigned: unknown

G. Basic Claim made: Landlord, the Defendant, refuses to return Plaintiffs Security Deposit.

H. Disposition of this case: Still Pending

I. Approximate date of disposition: Progress Call on 07/07/2021

## IV. Statement of Claim:

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. The Plaintiff respectfully brings before this Honorable Court the following complaint against the named Defendants alleging various violations of the Plaintiffs Constitutional rights as well as State law violations as well.

2. Plaintiff is, and was at all times relevant to this action, a pretrial detainee within the Lee County Jail. (LCJ)

3. Plaintiff has exhausted all of his administrative remedies as is evidenced by the attached Plaintiff's Exhibits referenced throughout.

## Count I

4. On 12/08/2020 Plaintiff recieved a letter via inter-jail mail from the 'Medical Department' which is also the Defendant Advanced Correctional Healthcare, Inc. (ACH) (Plaintiffs Exhibit A) Defendant ACH is currently on contract with Defendant Lee County Sheriff's Department (LCSD) to provide medical care to patients within the LCJ.

4

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

This letter the Plaintiff recieved from Defendant ACH stated that the Plaintiffs private and personal medical information was shared with another patient, another pretrial detainee/detainee, within the LCJ absent any consent or permission from the Plaintiff. There was no penological reason for this Breach of the Plaintiffs Privacy and Confidentiality. The Defendant Alma Martija, M.D. (Dr. Martija) is the Physician that violated the Plaintiffs Privacy and Confidentiality of his highly personal and private medical information by sharing it with another patient.

5. On 12/08/2020 the Plaintiff recieved information from another pretrial detainee that this other individual had previously submitted grievances and appeals to Defendant ACH, Defendant LCSD, and Defendant Lee County Sheriff John Simonton (sheriff Simonton). (Plaintiff's Exhibits D & E) These grievances were against Defendant Dr. Martija and her policy and practice of violating her patient's rights to privacy and confidentiality by opening other patients medical files in front of other patients as well as leaving open other patients files in full view of other patients to be able to view and read them.

6. On 12/09/2020 the Plaintiff submitted a grievance via the Kiosk on the letter Plaintiff recieved the day before as stated in paragraph 4. (Plaintiffs Exhibit B)

5

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

②

7. On 12/09/2020 Jail Supt. Lawson responded to Plaintiffs grievance by stating that she was going to have a meeting the next morning with the Regional Nurse from Defendant ACH, the LCJ Nurse, Chief Deputy Glessner and herself to get to the bottom of this matter.

8. On 12/10/2020 Plaintiff followed up on his first grievance with a follow-up request/appeal. (Plaintiffs Exhibit C) This was addressed to Supt. Lawson requesting an update as to the outcome of the meeting held that morning.

9. On 12/10/2020 Plaintiff spoke with Supt. Lawson briefly in the doorway of holding cell #3 while awaiting court. At that time Supt. Lawson assured the Plaintiff that the meeting had occurred and they were taking the matter seriously.

10. On 12/10/2020 Plaintiff recieved a response from Supt. Lawson on the appeal as mentioned in paragraph 8, Supt. Lawson stated that she would pull the Plaintiff out to both herself and Chief Deputy Glessner on this matter.

11. In regards to claim in paragraph 10, Plaintiff has never been pulled out to speak with either Supt. Lawson or Chief Deputy Glessner.

12. On 01/28/2021 Plaintiff sent a letter of appeal to Michael Leathers, a criminal justice specialist with the Jail and Detentions Standards Unit. (Plaintiffs Exhibit F)

13. On 04/02/2021 a response to Plaintiffs appeal to Michael Leathers was sent. (Plaintiffs Exhibit G) This response, from Edwin R. "Bob" Bowen states that Supt. Lawson has reviewed this matter with Defendant ACH who has written a letter of apology for the mistake.

14. Since this matter has come to Plaintiff's attention he has experienced extreme Anxiety, sleeplessness, and a distrust verging on paranoia regarding the Defendants ACH, Dr. Martija and Sheriff Simonton.

15. Plaintiff has, despite assurances otherwise, never spoken with Supt. Lawson or Chief Deputy Glessner upon this serious matter.

16. Upon information and belief Plaintiff claims that nothing has been done to report Defendant Dr. Martija for violating her patients privacy.

17. Plaintiff claims that Defendant Dr. Martija violated the Plaintiffs Fourteenth Amendment Due Process rights when she violated the Plaintiffs privacy and confidentiality of his medical information.

### Count II

18. Plaintiff incorporates paragraphs 1-16 as though they were fully stated herein.

19. Plaintiff claims that Defendant Dr. Martija violated the Plaintiffs Fourteenth Amendment rights when she was Deliberately Indifferent to the Plaintiffs privacy and confidentiality due to the fact that Defendant Dr. Martija practiced a policy that violated her patients rights as is evidenced by prior grievances against her.

20. Plaintiff claims that Defendant Sheriff Simonton violated the Plaintiffs Fourteenth Amendment rights when he acted with Deliberate Indifference to the Plaintiffs privacy and confidentiality when he turned a blind eye to Defendant Dr. Martijas policy and practice of violating her patients privacy thereby condoning her actions which in turn led to the Plaintiffs privacy and confidentiality of his medical information being violated.

21. Plaintiff claims that Defendant ACH violated the Plaintiffs Fourteenth Amendment rights when they acted with Deliberate Indifference to the Plaintiff's privacy and confidentiality when they turned a blind eye to Defendant Dr. Martijas policy and practice of violating her patients privacy thereby condoning her actions which in turn led to the Plaintiffs Privacy and Confidentiality of his medical information being violated.

22. Plaintiff claims that Defendant LCSD violated the Plaintiffs Fourteenth Amendment rights when they acted with Deliberate Indifference to the Plaintiff's privacy and confidentiality when they turned a blind eye to Defendant Dr. Martijas policy and practice of violating her patients privacy thereby condoning her actions which in turn led to the Plaintiff's Privacy and Confidentiality of his medical information being violated.

23. Upon information and belief the Plaintiff claims that the Defendants Sheriff Simonton, ACH, and LCSD had full knowledge of the Defendant Dr. Martijas unconstitutional policy and practice due to grievances and letters of appeal having been submitted.

## Count III

24. Plaintiff incorporates paragraphs 1-16 as though they were fully stated herein.

25. Plaintiff claims that Defendant Dr. Martija violated Illinois State Law regarding privileged communications between Physician and Patient when she shared the Plaintiffs medical information with another patient absent any consent from the Plaintiff.

Count IV

26. Plaintiff incorporates paragraphs 1-16 as though they are fully stated herein.

27. Plaintiff claims Intentional Infliction of Emotional Distress by Defendant Dr. Martija when she shared the Plaintiffs personal and private medical information utilizing a pattern of outrageous conduct, that of instituting a policy and practice of violating her patients privacy, without Plaintiffs consent or permission.

Count V

28. Plaintiff incorporates paragraphs 1-16 as though they are fully stated herein

29. Plaintiff claims Negligent Infliction of Emotional Distress by Defendant Dr. Martija. The Defendant Dr. Martija owed the Plaintiff a duty of keeping his medical information private and confidential, breached the plaintiffs privacy, and caused the plaintiff to experience extreme emotional distress.

Count VI

30. Plaintiff incorporates paragraphs 1-16 as though they are stated herein.

31. Plaintiff claims that the Defendant Dr. Martija violated the plaintiffs Medical Patients Rights as stated by the Illinois Medical Patients Rights Act when Defendant Dr. Martija violated Plaintiffs Privacy and confidentiality

Count VII

32. Plaintiff incorporates paragraphs 1-16 as though they are fully stated herein.

33. Plaintiff claims that Defendant Dr. Martija violated the Plaintiffs rights under the Illinois Jail and Detention Standards when she violated the Plaintiffs privacy and confidentiality and failing to safely maintain the Plaintiffs medical records as required by section 701.90 (a)(4) of part 20 of the Illinois Administrative Code.

Count VIII

34. On 12/07/2020 Plaintiff met with Defendant Dr. Martija to review the Plaintiffs blood test results and medical ailments. During this visit the Defendant Dr. Martija verbally assured the Plaintiff that he would be recieving his much needed medication Omeprazole for relief from the Plaintiffs extreme acid reflux.

35. On 12/13/2020 Plaintiff had cause to submit a grievance on the Defendant Dr. Martija. The Plaintiff submitted this grievance (Plaintiffs Exhibit H) to the Defendant ACH as the medical department as well as a verbatim copy to the Defendant LCSD as the jail staff thereby notifying them as to Defendant Dr. Martija's actions.

This grievance stated that the Plaintiff had not yet recieved the much needed medication Omeprazole that the Defendant Dr. Martija had assured the Plaintiff that he would be recieving. The plaintiff was suffering extreme pain from his acid reflux as well as extreme anxiety increased every day that he awaited upon the medication Defendant Dr. Martija assured him yet he failed to recieve. Plaintiff was also suffering from nausea and vomitting as a direct result from his acid reflux and anxiety. Plaintiff claims that due to the medication Omeprazole being an Over-the-Counter (OTC) medication that was readily

(7)

available and there was no penological need or reason, the Plaintiff should have recieved the medication without delay.

36. On 12/14/2020 the Jail Supt. responded to the plaintiffs grievance stated in paragraph 35 by saying that she would speak to medical.

37. On 12/14/2020 Plaintiff responded by appeal to the Jail Supt.'s response stated in paragraph 36. Plaintiff stated that he had sent a verbatim copy to the medical department, Defendant ACH, but they had not yet replied as of that time.

38. On 12/16/2020 Plaintiff recieved a response to his medical grievance. The Nurse replied, "You seen the doctor (Defendant Dr. Martija) on 12/07/2020. Her 'Formulated Medical Decision' was to not place you on medication."

39. On 12/16/2020 Plaintiff submitted a grievance to Defendant ACH as the Medical Department as well as verbatim copy to the Defendant LCSD as the Jail Staff. (Plaintiffs Exhibit I) This grievance is on the response Plaintiff recieved as stated in paragraph 38. The grievance details again that the Plaintiff was still in extreme pain and his suffering was exacerbated by Defendant Dr. Martija lying to his face when she assured the Plaintiff she would be prescribing Omeprazole and then, when Plaintiff left Defendant Dr. Martija's presence, chose not to prescribe the medication and never notified the patient, the Plaintiff, of her decision. Defendant Dr. Martija knew that this medication would help relieve the pain and suffering that the Plaintiff was experiencing.

40. On 12/16/2020 Plaintiff recieved a response to the grievance submitted to Defendant LCSD as the Jail Staff as stated in paragraph 39. The reply stated simply "Reviewed & Noted" by Defendant Lee County Sgt. John Edwards. (Defendant Sgt. Edwards)

41. On 12/17/2020 the Plaintiff appealed the response stated in paragraph 40 by Defendant Sgt. Edwards stating that the Plaintiff was notifying the jail staff of the actions of the medical staff.

42. On 12/18/2020, eleven (11) days after the meeting Plaintiff had with Defendant Dr. Martija as stated in paragraph 34, Plaintiff was called out to speak with the nurse. During this meeting the nurse told the Plaintiff that Defendant Dr. Martija was prescribing him Omeprazole 20 mg. 1 x day for 7 days. The nurse then proceeded to notify the Plaintiff that it was Defendant Dr. Martija's policy to place any patient recieving medication for acid reflux on commissary restriction. The nurse told the Plaintiff that she even showed proof that the Plaintiff was not abusing his commissary to Defendant Dr. Martija yet Defendant Dr. Martija still placed the Plaintiff on commissary restriction for eight weeks.

43. On 12/28/2020 Plaintiff submitted a request / grievance to the medical department, Defendant ACH, stating that the Plaintiff has no antacids or funds with which to purchase any. Plaintiff states that while on Omeprazole his acid reflux was less extreme and more manageable yet since it has been stopped the Plaintiffs acid reflux has come back with a vengeance. Plaintiff has been in an almost constant state of nausea and has bile reaching his nasal cavities causing extreme pain and burning. Plaintiff states that commissary has nothing to do with his acid reflux as almost every meal causes it to flare up stronger. Commissary in fact helps in the form of mustard and crackers. Plaintiff states that he wishes for something to be done yet he is weary of Defendant Dr. Martija due to her inability to listen to her patient and her lies. Plaintiff though is in need of relief and in need of something being done.

44. On 12/30/2020 Plaintiff recieved a response from Defendant ACH, medical, stating Defendant Dr. Martija informed of Plaintiffs request, awaiting orders.

45. On 12/31/2020 Plaintiff recieved a note from the nurse (Plaintiffs Exhibit J) stating that the Plaintiff would recieve Omeprazole 20mg/night for 30 days.

46. On 01/25/2021 Plaintiff recieved a note from the nurse. (Plaintiffs Exhibit K) stating that Defendant Dr. Martija was continuing the Omeprazole 20mg for another six weeks to then be re-evaluated at that time.

47. On 01/28/2021 Plaintiff sent an appeal (Plaintiffs Exhibit F) to Michael Leathers at the Jail and Detention Standards Unit (Unit) in Springfield, IL.

48. At some time prior to 02/04/2021 Plaintiff submitted a request to the medical department, Defendant ACH, detailing the Plaintiffs severe chronic lower back pain and severe chronic left Knee pain.

49. On 02/04/2021 Plaintiff recieved a note from the nurse stating that the Defendant Dr. Martija gave an order for Tylenol Extra-Strength 500 mg 2x day for 7 days as well as changing the Omeprazole to Pepcid for long-term use. (Plaintiffs Exhibit L)

50. On 02/08/2021 Plaintiff was called out to see Defendant Dr. Martija. Defendant Dr. Martija notified the Plaintiff that due to his acid reflux she would not issue the Plaintiff any Ibuprofen or Naproxen as he requested but would continue instead with both the Pepcid and the Tylenol for the rest of the Plaintiffs stay within the LCJ, Defendant Dr. Martija then said that she would order a back and Knee x-ray.

51. On 02/12/2021 Plaintiff submitted a grievance to Defendant ACH as the medical department and a verbatim copy to Defendant LCSD as the jail staff. (Plaintiffs Exhibit M) This grievance references the claim in paragraph 50 that Defendant Dr. Martija gave Plaintiff every assurance that he would recieve the medication she promised he would recieve, yet four (4) days later discontinued the Tylenol regardless of the

the pain and suffering the Plaintiff was experiencing. Plaintiff grieves that this is the same thing Defendant Dr. Martija had done previously to the Plaintiff as stated in paragraphs 34, 35, & 39 (mainly). These lies that Defendant Dr. Martija told served no medical or penological reason.

52. On 02/13/2021 Supt. Lawson responded to the grievance stating that as this grievance is clearly medical, write medical.

53. On 02/13/2021 Plaintiff appealed the response by Supt. Lawson stating that the Plaintiff is cognizant that this is regarding a medical issue and that the Plaintiff had already sent a verbatim copy to medical. Plaintiff stated that because of this being an ongoing and repetitive issue with Defendant Dr. Martija's actions deliberately causing the plaintiff pain and prolonged suffering, he felt that Defendant LCSD as jail staff should know.

54. On 02/16/2021 Supt. Lawson responded stating, "Noted."

55. Plaintiff, after a reasonable opportunity for further investigation or discovery, believes that at some point after 02/13/2021 yet prior to 03/31/2021 the Medical Department, Defendant ACH, and Defendant Dr. Martija had placed the Plaintiff back on the Tylenol and again discontinued it during that time.

56. Plaintiffs x-rays that Defendant Dr. Martija had ordered were done sometime in Feb. 2021.

57. Plaintiff believes after a reasonable opportunity for further investigation or discovery, that a different physician other than Defendant Dr. Martija prescribed to the Plaintiff Tylenol sometime in March of 2021.

58. On 03/31/2021 Plaintiff recieved a note from the medical department, Defendant ACH. (Plaintiffs Exhibit N) This note asked if the Plaintiff

wished to have the Tylenol discontinued. This note came as a response to a request that Plaintiff had submitted to medical with regards to his lower back pain and knee pain being extremely severe, so severe that the Plaintiff at times could barely walk even a few feet. Defendant ACH also stated they could find no handout or information on Osgood-Schlatters Disease - this being the diagnosis of Plaintiffs left knee after the x-rays.

59. Plaintiff responded to this note via the Kiosk. In Plaintiffs response to the medical department, Defendant ACH, the Plaintiff assured them that in no way whatsoever did he wish to discontinue the Tylenol as he was in such extreme pain already as it was.

60. On 04/02/2021 a response to Plaintiffs appeal to Michael Leathers was sent from Edwin R. "Bob" Bowen, Manager of the 'Unit', (Plaintiffs Exhibit G) Nothing in this response from "Bob" even broached this issue that the Plaintiff brought to their attention, those of paragraphs 34 - 59.

61. At sometime towards the beginning of April of 2021 the Plaintiff met with Defendant Dr. Martija where she reviewed the results of the Plaintiffs x-rays with him. Plaintiff told Defendant Dr. Martija that his lower back and knee pain was so extreme as to preclude almost any walking most of the time. Plaintiff asked Defendant Dr. Martija what could be done and asked for information on this Osgood-Schlatters Disease. Defendant Dr. Martija would only tell the Plaintiff that the Osgood-Schlatters Disease was a young persons disease and had to do with jumping around. Plaintiff is 40 years old and does not jump around. Defendant Dr. Martija told the Plaintiff that all she can do for him is give advice to lose weight. She says all of Plaintiffs issues are related solely to his weight. Plaintiff asked since he has no way to exercise to be placed on a diet but Defendant Dr. Martija said no.

62. On 05/06/2021 Plaintiff found out at morning med call that his Tylenol was again stopped. Plaintiff submitted a grievance right away to the medical department, Defendant ACH, asking why was he removed from recieving the Tylenol that he very much needed.

63. On 05/07/2021 the medical department, Defendant ACH, responded stating that the Doctor had only ordered it for two months.

64. On 05/07/2021 Plaintiff sent another grievance to the medical department, Defendant ACH, stating that although plaintiff is in extreme back pain and knee pain everyday he cannot recieve any pain medication? Plaintiff again reminded Defendant ACH that the Defendant Dr. Martija had promised the Plaintiff that he would recieve the Tylenol and Pepcid for the rest of his time here.

65. On 05/10/2021 the nurse responded to the claim in paragraph 64 by saying, "you can buy it off commissary Steven."

66. On 05/10/2021 Plaintiff submitted a grievance to the medical department, Defendant ACH, responding to the nurse's response stating that the Plaintiff is aware that he can purchase Tylenol from commissary but it would cost the Plaintiff around $25.00/month and he could not afford that. Plaintiff stated that he has to consistently do this back and forth with Defendant Dr. Martija and the constant and extreme pain in the Plaintiffs lower back and left knee does not just disappear.

67. On 05/10/2021 the Nurse responded to the Plaintiffs grievance claim stated in paragraph 66 by stating that she would put a message in to the Doctor regarding the Plaintiffs complaint.

68. On 05/10/2021 Plaintiff recieved a note (Plaintiffs Exhibit 'O') from the medical department, Defendant ACH. The note states that Defendant Dr. Martija

renewed the Plaintiffs Acetaminophen twice daily for an additional 30 days then it is to be discontinued.

69. Plaintiff claims that these delays in medical treatment caused increase pain and suffering to the Plaintiff evidenced by the increase in nausea, vomitting, acid bile to his sinuses, and overall pain increase.

70. Plaintiff claims that these delays had no penelogical reason and the medication, both OTC meds, were readily availlable.

71. Plaintiff claims that these delays in readily availlable medical treatment came about due to the lies set forth by the Defendant Dr. Martija.

72. Plaintiff claims that Defendant Dr. Martija's lies as well as the delays in medical treatment caused emotional distress and anxiety in the Plaintiff.

73. Plaintiff claims that Defendant Dr. Martija violated the Plaintiffs Fourteenth Amendment Due Process right to medical care and treatment when she intentionally lied to Plaintiff and delayed such treatment as was necessary to relieve Plaintiffs pain and suffering without any medical or penelogical need or reason.

## Count IX

74. Plaintiff incorporates paragraphs 1-3 and 34-72 as though they are fully stated herein.

75. Plaintiff claims that Defendant Dr. Martija was Deliberately Indifferent to the Plaintiffs serious medical needs when she caused unnecessary

and wanton infliction of pain and suffering on the Plaintiff despite numerous grievances and requests by the Plaintiff.

76. Plaintiff claims that Defendant ACH was Deliberately Indifferent to the Plaintiffs serious medical needs when they allowed the Defendant Dr. Martija to cause the unnecessary and wanton infliction of pain and suffering on the Plaintiff. Plaintiff claims that the Defendant ACH knew of and condoned Defendant Dr. Martijas actions due to Plaintiffs grievances and the resulting inaction by Defendant ACH.

### Count X

77. Plaintiff incorporates paragraphs 1-3 and 34-72 as though they are fully stated herein.

78. Plaintiff brings against Defendant Dr. Martija state law claim stating that Defendant Dr. Martija violated the Plaintiffs rights under the Illinois Medical Patient Rights Act specifically 410 ILCS 50/3 (a). The Plaintiff claims that Defendant Dr. Martija's actions in lying to her patient, the Plaintiff, and delaying medical treatment does not exhibit "sound nursing and medical practices" and in fact exhibits the opposite.

### Count XI

79. Plaintiff incorporates paragraphs 1-3 and 34-72 as though they are fully stated herein.

80. Plaintiff claims state law claim of Intentional Infliction of Emotional Distress against Defendant Dr. Martija. Plaintiff contends that due to the Defendant Dr. Martija's pattern of lies and delays of treatment her actions and conduct are extreme and outrageous. The

Defendant Dr. Martija knew that her actions would cause the Plaintiff to suffer severe distress and knew as well that Plaintiff was experiencing anxiety and emotional distress already. Plaintiff claims that due to his ongoing medical issues he needed to see and recieve medical treatment. As is stated in grievances to medical and jail staff, the Plaintiff was wary of being seen by Defendant Dr. Martija but seeing as to how he is a pretrial detainee he had no other option. The Defendant Dr. Martijas conduct therefore in fact caused extreme and severe emotional distress.

## Count XII

81. Plaintiff incorporates paragraphs 1-8 and 34-72 as though they are fully stated herein.

82. Plaintiff brings state law claim of Negligent Infliction of Emotional Distress against Defendant Dr. Martija. Plaintiff claims that Defendant Dr. Martija owed the Plaintiff a duty of medical treatment and care as the Physician at the LCJ. Plaintiff claims that the Defendant Dr. Martija then breached that duty with her lies and delays of medical treatment. Plaintiff suffered severe and extreme emotional distress as a direct result of the Defendant Dr. Martijas actions.

83. Plaintiff brings state law claim of Negligent Infliction of Emotional Distress against Defendant ACH. Plaintiff claims that the Defendant ACH owed the Plaintiff a duty as they are on contract with the Defendant LCSD to provide medical services to the pretrial detainees/detainees within the LCJ of which Plaintiff is a pretrial detainee. The Plaintiff claims that the Defendant ACH breached that duty when they were presented with evidence of Defendant Dr. Martija's actions they turned a blind eye to it thereby condoning such actions. The Plaintiff claims that this has caused him severe and extreme emotional distress as a direct result.

Count XIII

84. On 02/19/2021 Plaintiff sent a valid Freedom of Information request to the Defendant ACH in Peoria, Illinois via the United States Postal Mail. (Plaintiffs Exhibit P)

85. On 04/02/2021 Plaintiff sent a valid Freedom of Information request to the Defendant ACH in Peoria, Illinois via the United States Postal Mail. (Plaintiffs Exhibit Q)

86. On 05/20/2021 Plaintiff sent a valid Freedom of Information request to the Defendant ACH in Peoria, Illinois via the United States Postal Mail. (Plaintiffs Exhibit R)

87. Plaintiffs claims in paragraphs 84-86 were never answered.

88. Plaintiff brings this state law claim against Defendant ACH for the willful and wanton refusal to respond to a legitimate Freedom of Information request under the Illinois Freedom of Information Act (FOIA). The Plaintiff claims that Defendant ACH exhibits wanton negligence in not responding to the Plaintiffs FOIA requests. The Plaintiff has attempted multiple times to recieve a response from Defendant ACH so as not to unduly take the courts time on this. Defendant ACH has still refused to answer.

Count XIV

89. On 01/08/2021 Plaintiff recieved a Disciplinary Report around 3:26 pm. (Plaintiffs Exhibit S) This report alleged that the Plaintiff had committed a Major Rule Violation of the LCJ Rules and Regulations. The report states that a hearing officer will hear the case after 24 hours of reciept of the report by the Plaintiff. The Disciplinary Report was written by Defendant Lee County Deputy Pettenger.

17

90. On 01/08/2021 Plaintiff was placed on lockdown and segregated to his cell as a direct result of the allegation set forth in the disciplinary report.

91. On 01/09/2021 at 01:00 am, a Disciplinary hearing was conducted by the Defendant Lee County Deputy Murray, (Murray) At that time the Plaintiff was found guilty of the Major Rule violation of Fighting between inmates and the recommended punishment was to segregate and confine the Plaintiff to his cell for 10 days. The reviewing officer, unknown Defendant badge # 578 accepted the hearing results.

92. On 01/11/2021 Plaintiff submitted a grievance on the allegations set forth within the Disciplinary Report as well as on the hearing that was conducted a 01:00am. (Plaintiffs Exhibit T) The Plaintiff stated that Defendant Pettenger alleged in the report that the Plaintiff violated Section XII of the LCJ Rules and Regulations yet Section XII pertains strictly to Medical and Not rule violations. Plaintiff also stated that the "hearing" held at 01:00 am by Defendant Murray was not held After 24 hours nor was the Plaintiff allowed to defend himself, bring forth witnesses upon his behalf. Plaintiff requested that the report be dismissed in its entirety and stricken from his record for failing to state any violation and for circumventing the Plaintiff's rights.

93. On 01/13/2021 Defendant Lee County Sgt. Edwards (Sgt. Edwards) came to the Plaintiff's cell while on lockdown under segregation for the Major Rule Violation as stated in paragraph 90. Defendant Sgt. Edwards had the Plaintiffs cell C4 unlocked and entered the Plaintiffs cell alone and pulled the cell door mostly closed behind him. Defendant Sgt. Edwards ostensibly entered the Plaintiffs cell for the purpose of resolving the grievance Plaintiff had submitted on the disciplinary report and hearing as well as the punishment. Defendant Sgt. Edwards proceeded to yell at the Plaintiff as well as chastize and berate the Plaintiff for supposedly listening to wrong information from other inmates. Defendant Sgt. Edwards was intimidating

and then threatened the Plaintiff with additional Felony charges if the Plaintiff was not happy with the results of the disciplinary hearing and the subsequent punishment.

94. On 01/16/2021 Plaintiff submitted a grievance on Defendant Sgt. Edwards (Plaintiffs Exhibit X) regarding the threats and intimidations stated in paragraph 93.

95. On 01/18/2021 Supt. Lawson responded to Plaintiffs claim in paragraph 94. She stated that there was no threats or intimidations.

96. On 01/20/2021 Plaintiff appealed the response that Supt. Lawson made as stated in paragraph 95. Plaintiff states that he understands the need to not have inmates fighting and understands the 'in house' measures. Plaintiff states that not only was Defendant Sgt. Edwards threatening and intimidating with what he was saying but also How he was saying it by yelling and his posture and attitude. Plaintiff also brings up that Defendant Sgt. Edwards ostensibly came into his cell to resolve the grievance that the Plaintiff submitted yet there has been No Resolution to the grievance at that time.

97. On 01/21/2021 Supt. Lawson responded to Plaintiffs claim as stated in paragraph 96. Supt. Lawson replied with a reviewed and noted then states that she is sorry for the Plaintiff feeling intimidated but the intent was informational only.

98. On 01/28/2021 Plaintiff submitted an appeal to Michael Leathers of the Illinois Jail and Detention Standards Unit. (Plaintiffs Exhibit F)

99. On 02/17/2021 Plaintiff submitted an appeal to Defendant LCSD as Jail staff on the grievance previously submitted 01/11/2021. (Plaintiffs Exhibit U.) Plaintiff reiterates most of original grievance.

100. On 02/17/2021 Jail Supt. Lawson responded with Reviewed & noted.

101. On 02/18/2021 Plaintiff appealed the response Reviewed & Noted by stating that he is unaware as to what reviewed and noted means or stands for or in any way resolves the issue at hand.

102. Plaintiffs claim in paragraph 101 has not been answered.

103. On 03/07/2021 Jail Staff responded to the Plaintiffs original grievance as stated in paragraph 92, Plaintiffs Exhibit T. The Jail Staff from Defendant LCSD that responded to this grievance of the Plaintiffs almost two months after it was submitted was Defendant Sgt. Edwards. In Defendant Sgt. Edwards's response he stated that with regards to Defendant Murrays actions Plaintiff was correct and Defendant Sgt. Edwards had spoken to him. However, Defendant Sgt. Edwards claims that it is his responsibility to come to any conclusion as to what is in the Disciplinary report and he refuses to dismiss the report.

104. On 03/09/2021 Plaintiff appealed the response from Defendant Sgt. Edwards as stated in paragraph 103 by stating that he felt that the denial of his grievance was misplaced and that Defendants Murray and the Unknown Defendant Officer Badge #578 had violated the Plaintiffs Procedural Due Process rights therefore the Disciplinary Report should be dismissed.

105. On 03/10/2021 Supt. Lawson responded by stating that the Plaintiffs Disciplinary Report will stand as is.

106. On 04/02/2021 Plaintiffs appeal to Michael Leathers as stated in paragraph 98, Plaintiffs Exhibit F, was responded to by Edwin R. "Bob" Bowen, Manager (Plaintiffs Exhibit G) This response stated that, in regards to paragraphs 89 through 98, due to no final local decision on the grievance

then the Plaintiffs appeal to the Jail and Detention Standards Unit was not actionable.

107. This letter of response, as claimed in paragraph 106 and Plaintiffs Exhibit G, also stated that with regards to Plaintiffs claim in Paragraph 93-98 with regards to the intimidation of the Plaintiff by the Defendant Sgt. Edwards, Supt. Lawson has reviewed the matter and found that jail staff acted accordingly.

108. On 04/09/2021 Plaintiff responded to Edwin R. "Bob" Bowen's letter of response as stated in Paragraphs 106 & 107. In Plaintiff's response (Plaintiffs Exhibit V) the Plaintiff explains to "Bob" that he had sent the appeal to Michael Leathers absent any final local decision due to the fact that there are times when the Defendant LCSD never even responds to some grievances or, as in this case, takes two months to even respond. After 30 days the Plaintiff no longer has access to the grievance to appeal the grievance. Plaintiff then notified "Bob" that since he has recieved a final staff response he is again appealing this matter with Michael Leathers of the Jail and Detention Standards Unit.

109. On 04/09/2021 Plaintiff again appealed the issues stated within paragraphs 89-107 by submitting a letter and copies of the pertinent grievances with the final staff responses to Michael Leathers of the Jail and Detention Standards Unit. (Plaintiffs Exhibit W)

110. Plaintiff claims that he was subjected to cruel and unusual punishment when the Plaintiff, a pretrial detainee, was subjected to punishment in the form of segregation and confinement to his cell by the Defendant LCSD in direct response to an alleged rule violation and disciplinary report written by Defendant Pettenger that clearly states no rule violation as stated by the LCJ rules and regulations. This punishment deprived the Plaintiff of his liberty by restricting his

movement and access to phones, showers, social interaction and the ability to conduct legal research.

## Count XV

111. Plaintiff incorporates paragraphs 1-3 and 89-109 as though they are fully stated herein.

112. Plaintiff claims under the Fourteenth Amendment that the Defendants Murray and the Unknown Officer Badge #578 violated the Plaintiffs Procedural Due Process Rights when the Defendants held a hearing on the Disciplinary report that was issued to the Plaintiff at 01:00 am, only 9.5 hours approximately after the report was written and not the required 24 hours. Plaintiff also claims that his Due Process rights were further violated when the Defendants Murray and #578 did not allow the Plaintiff leave by which to defend himself. Plaintiff claims that at no time was he questioned as to what happened, if anything, nor was the Plaintiff allowed to give testimony or bring forth any witnesses.

## Count XVI

113. Plaintiff incorporates paragraphs 1-3 and 89-109 as though they are fully stated herein.

114. Plaintiff claims that Defendant Lee County Sheriff John Simonton failed to train the Defendant LCSD Jail staff at the LCJ which caused the Plaintiff's rights to be violated. The Plaintiff claims that due to Defendant Murray holding the hearing, badge #578 reviewing and accepting the results of the hearing, and no-one else amongst the Defendant LCSD intervening or alerting anyone as to the violations of the Plaintiffs rights, this shows a pattern of inadequate training.

Count XVII

115. Plaintiff incorporates paragraphs 1-3 and 89-109 as though they are fully stated herein.

116. Plaintiff claims that the Defendant Sgt. Edwards violated the Plaintiffs' First Amendment right when the Defendant Sgt. Edwards came to the Plaintiffs cell and threatened and intimidated the Plaintiff if the Plaintiff wished to pursue the grievance that the Plaintiff had submitted as claimed in paragraph 93. Plaintiff claims that if, as Supt. Lawson claims and as stated in paragraph 97, Defendant Sgt. Edwards' reason for coming to the Plaintiffs cell alone was informational, then there would have been no reason for Defendant Sgt. Edwards to yell at the Plaintiff and act aggressively. Plaintiff also claims that if Defendant Sgt. Edwards had come to resolve the grievance that Plaintiff had submitted then it would not have taken two months for a response. Plaintiff notes that Defendant Sgt. Edwards had never before, nor after, spoken with the Plaintiff to attempt to resolve any grievance. It has always been done via the Kiosk other than this one occurrence. The Plaintiff claims that Defendant Sgt. Edwards' actions were to stop the Plaintiff from following through with the grievance.

Count XVIII

117. Plaintiff incorporates paragraphs 1-3 and 89-109 as though they are fully stated herein.

118. Plaintiff brings forth a State law claim of Intentional Infliction of Emotional Distress (IIED) against Defendant Sgt. Edwards. The Plaintiff claims that the fact that he is a pretrial detainee and the Defendant Sgt. Edwards has, as an officer of the Defendant LCSD, complete, or nearly so, authority over the Plaintiff which makes the Defendant Sgt. Edwards'

conduct towards the Plaintiff extremely outrageous. The Plaintiff claims that the Defendant Sgt. Edwards' actions in yelling at the Plaintiff and threatening the Plaintiff with Felony charges by their very nature were likely to cause extreme and severe emotional distress. The Plaintiff claims that he suffered severe emotional distress as a direct result of Defendant Sgt. Edwards' actions towards him.

V Relief:

The Plaintiff respectfully prays that this Honorable Court consider the following request for relief:

1. With regards to Counts I, II, VIII, IX, XIV, XV, XVI, and XVII the Plaintiff respectfully prays that this Honorable Court:

   A. Declare that the acts and omissions described herein violated the Plaintiff's rights under the Constitution and Laws of the United States;

   B. Order the Defendants named therein to pay Punitive damages;

   C. Order the Defendants named therein to pay Nominal damages;

   D. Order the Defendants to pay reasonable attorney fees and costs, if any; and

   E. Grant other just and equitable relief that this Honorable Court deems necessary.

2. Plaintiff respectfully prays that this Honorable Court also considers in regard to Counts VIII and IX;

   A. In addition to the Punitive and Nominal damages already requested, the Plaintiff also requests this Honorable court to order the defendants named therein to pay Compensatory damages as well.

3. With regards to Counts III, IV, V, VI, VII, X, XI, XII, and XVIII the Plaintiff respectfully prays that this Honorable Court:

   A. Declare that the acts and omissions described herein violated

V Relief: (cont.)

the Plaintiffs rights under the statute of Illinois State Law or code;

B. Order the Defendants named therein to pay Punitive damages;

C. Order the Defendants named therein to pay Nominal damages;

D. Order the Defendants to pay reasonable attorney fees and costs, if any; and

E. Grant other just and equitable relief that this Honorable Court deems necessary.

4. Plaintiff respectfully prays that this Honorable Court also considers in regards to counts X, XI, and XII:

A. In addition to the Punitive and Nominal damages already requested, the Plaintiff also requests this Honorable Court to order the Defendants named therein to pay Compensatory damages as well.

5. With regards to Count XIII of this action, the Plaintiff respectfully prays that this Honorable Court:

A. Declare that the acts and omissions described herein violated the Plaintiffs rights under the statute of Illinois State Law;

B. Plaintiff requests that this Honorable Court impose a civil penalty fine against the Defendant of no less than $2,500.00 and no more than $5,000.00 for each occurance that this Honorable Court finds in favor of the Plaintiff;

V Relief : (cont.)

    C. Order the Defendants named therein to pay Punitive damages;

    D. Order the Defendants named therein to pay Nominal damages;

    E. Order the Defendants to pay reasonable attorney fees and costs, if any; and

    F. Grant other just and equitable relief that this Honorable Court deems necessary.

VI. The Plaintiff demands that the case be tried by Jury, ☒ Yes ☐ No

## Certification

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information, and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this 18th day of June , 2021

_____
(Signature of plaintiff)

Steven Andrew Johnson
(Print name)

# 351
(I.D. Number)

240 E. Progress Dr.
Dixon, IL
61021
(Address)